IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALONZO MCKINNEY,

        Plaintiff,                      No. CIV S-99-0622 MCE EFB P

        vs.

CALIFORNIA DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

      Plaintiff is a prisoner, without counsel, suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the January 6, 2000, third amended complaint, in which plaintiff claims the following: (1) that defendant R. Thomas violated plaintiff's First Amendment right to visitation by improperly calculating plaintiff's classification score, thereby causing plaintiff to be housed at a facility distant from his family; and (2) that defendant R. Thomas was deliberately indifferent to plaintiff's need for safety by improperly calculating plaintiff's classification score, thereby housing plaintiff with more dangerous prisoners than should have been the case. Defendant Thomas moves for summary judgment. Plaintiff opposes. For the reasons stated below, the court finds that there is no genuine issue for trial.[1]

---

[1] In his opposition to defendant's motion, plaintiff accuses defendant of forging defendant's Exhibit B, pages 3-5, and pages 15-16, and asserts that his own Exhibit 11

1

## I.   FACTS

On August 28, 1997, plaintiff was convicted of assault on and resisting a law enforcement officer, and was sentenced to prison. Def's Ex. B. On November 17, 1997, plaintiff arrived at North Kern State Prison Reception Center. *Id*., at 3-4. At the time of the events giving rise to this action, defendant R. Thomas was a correctional counselor at North Kern State Prison Reception Center. Also at that time, Department of Corrections and Rehabilitation ("CDCR") had a process for placing each prisoner in an institution that met all his needs and which provided the security necessary safely to confine him. *See* Cal. Pen. Code 5068 (1982) (requiring Director of Corrections to ensure that the background and all "pertinent circumstances" of each new prisoner be investigated before determining where to house him). Integral to this process was an administrative ranking of institutional security by Roman numeral I through IV, with IV being the most secure. Cal. Code Regs. tit. 15, § 3377. To determine which level of institution was appropriate for a prisoner, a correctional counselor reviewed all documents about the prisoner which were in the possession of the CDCR, and calculated what is known as a "classification score." *Id*., at § 3375.j. The calculation was based on a system of adding and subtracting points. Points were added for negative behavior as evidenced by disciplinary reports, for example, and were subtracted for positive behavior as evidenced by having graduated from high school, for example. Thus, the counselor arrived at a number reflecting the security risk a prisoner poses. *Id*., at § 3375-337.2 (1997). The lower the score, the less of a security risk the prisoner was deemed to pose. *Id.,* at § 3375(d). However, the system permitted a prison official to send a prisoner especially likely to be preyed upon to a less

---

(erroneously designated 11A in plaintiff's opposition to the motion and in defendant's reply) was not signed by the correctional counselor who generated it. The defendant properly authenticated all of the records he submitted by having the custodian of records certify them. *See* Fed. R. Evid. 901(a). Plaintiff has not submitted any evidence to bring their authentication into question. Nor has plaintiff offered any evidence to substantiate his allegation that prison staff improperly generated his Exhibit 11. The court has reviewed the document, and there is no place for a correctional counselor's signature. Accordingly, the court finds that defendant did not fabricate the evidence upon which he relies.

secure prison than the classification score suggested. *See Id.,* at § 3375.3(b)(21), (22) (officials may accommodate prisoners with a record of sexual acts in prison or whose sexual orientation required special placement to an institution that is not necessarily consistent with their classification score); *see also* Cal. Code Regs. tit 15, § 3375.2 (enumerating factors which could justify placing a prisoner in an institution inconsistent with the classification score). Absent some special circumstance, a prisoner with a classification score of 52 points or more would be placed in a Level IV facility. *Id.,* at § 3375.1. A prisoner with a classification score of 28 - 51 was eligible for confinement in Level III prisons. *Id.*, at §3375.1(a)(3) (1997). There is no evidence that any special circumstance warranted plaintiff's placement in a facility ranked lower than Level IV.

On or around January 20, 1998, defendant R. Thomas applied CDCR guidelines to calculate plaintiff's classification score. Def.'s Mot., Ex. B., at 5. He determined that plaintiff had 62 points. *Id*., at 5. Thereafter, Classification Staff Representative Sutherla decided to place plaintiff at High Desert State Prison. Pl.'s Opp'n, Ex. 10. On January 19, 1999, a classification committee found that circumstances justified lowering plaintiff's score to 58 points, but determined that plaintiff's placement at HDSP was appropriate. Def.'s Mot., Ex. B, at 7. At that time, plaintiff requested that he be transferred to the California Correctional Institution, ("CCI"), or Corcoran State Prison, also Level IV prisons, to be closer to his family. *Id.* On March 3, 1999, he was approved for transfer to LAC instead of the institutions he requested because, "[r]equested institutions are not currently open to intake. Placement is based on the availability of institutional programs and housing per PC 5068. LIFE Prisoner Status is noted." Def.'s Mot., Ex. B, at 8. On July 8, 1999, he was transferred.

On an unspecified date, plaintiff was assaulted and sexually harassed by another prisoner at LAC. Third Am. Comp. at 3A. On December 9, 1999, plaintiff filed a grievance, apparently related to the assault and harassment, complaining that his classification score was wrong. Pl.'s Opp'n, Ex. 17A. He asserted that since he had graduated from high school and had comported

3

himself well while in the Los Angeles County Jail before trial, he was qualified to be placed in a Level III facility. *Id.* On March 6, 2000, officials partially granted the appeal based on recently received documents showing that plaintiff had graduated from high school. Pl.'s Opp'n, Ex. 16. However, the adjustment for this information gave plaintiff a classification score of 54. Pltf. Opp'n, Ex. 16A. Therefore, according to CDCR standards, plaintiff remained eligible for placement in a Level IV institution. *Id.* On December 27, 2000, as a result of plaintiff pursuing his grievance, prison officials sent a memo to the Los Angeles County jail requesting information about plaintiff. Pl's Opp'n, Ex. 8A. Jail officials did not promptly respond. *Id.* On April 16, 2002, after finally receiving and reviewing plaintiff's jail records, prison officials learned that while in jail, plaintiff incurred one serious disciplinary report, one charge of assault on staff, and two charges of possession of a weapon while he was in jail. Def.'s Ex. B at 5. Thus, plaintiff's behavior justified increasing his classification score by 12 points. *Id.*

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The utility of Rule 56 to determine whether there is a "genuine issue of material fact," such that the case must be resolved through presentation of testimony and evidence at trial is well established:

> [T]he Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment,

---

[2] On February 28, 2000, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

4

> the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex*, 477 U.S. at 323.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). He must rely on evidence based upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Here, plaintiff's action arises

5

under 42 U.S.C. Section 1983 and the Eighth Amendment. To prevail at trial, he must prove that the defendant deprived him of his Eighth Amendment rights while acting under color of state law. To prove an Eighth Amendment violation, plaintiff must show by a preponderance of competent evidence that the defendant knew plaintiff faced a risk of harm that "is not one that today's society chooses to tolerate," and that the defendant was "deliberately indifferent" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). To prove a First Amendment violation, plaintiff must show that the infringement on his First Amendment right was not reasonably related to a legitimate penological goal. As discussed below, plaintiff has failed to establish a genuine dispute for trial over this material issue.

## III.  ANALYSIS

The court first undertakes to weed out plaintiff's claims to which he clearly is entitled to no relief. Plaintiff seems to claim that R. Thomas miscalculated plaintiff's classification score to retaliate against plaintiff for having committed assault on a law enforcement officer. Third Am. Comp. at 3A. A cause of action for retaliation exists where a plaintiff alleges that an individual state actor took adverse action against plaintiff because plaintiff engaged in a constitutionally protected activity, the adverse action chilled plaintiff's exercise of his rights, and it did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). Committing assault on a police officer cannot in any way be said to be an exercise of First Amendment rights. Therefore, even if Thomas did purposely miscalculate plaintiff's classification score for the reason alleged, he did not thereby violate plaintiff's First Amendment rights. Plaintiff does not state a claim for retaliation.

Plaintiff also appears to advance, under a due process theory, a claim that R. Thomas intentionally miscalculated plaintiff's classification score, thereby causing plaintiff to be placed in an institution distant from his family. The law is clear that a due process claim consists of allegations that a state actor denied plaintiff a specific right protected by the federal constitution

without procedures that are constitutionally required to ensure fairness. *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995); *Wolff v. McDonnell*, 418 U.S. 539, 563-566 (1974). Prisoners have no federally protected interest in their classification status, *see Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987), or in being housed at a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Since plaintiff does not premise his claim to fair procedures, i.e., careful and accurate calculation of the classification score, on a federally protected interest, he does not state a claim.

The court now turns to the issues presented by defendant's motion for summary judgment. As noted, plaintiff claims that R. Thomas violated plaintiff's First Amendment rights by placing plaintiff in an institution that was distant from plaintiff's family, who could not afford the costs associated with traveling to see plaintiff. Prisoners retain those First Amendment rights that are not inconsistent with their status as prisoners or with the legitimate penological goals of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Freedom of association is among the rights least compatible with incarceration." *Overton v. Basseta*, 539 U.S. 112, 131 (2003). While the right exists, "[s]ome curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131. Thus, in evaluating whether a particular restriction on having visitors is constitutional, federal courts must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *See Overton*, 539 U.S. at 132. A decision to restrict a prisoner's visits must be reasonably related to legitimate penological interests. *Overton*, 539 U.S. at 132; *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining reasonableness, the court must consider the following factors: (1) whether there is a valid, rational connection between the regulation and a legitimate and neutral government interest, (2) whether there are alternative means of exercising the constitutional right, (3) the impact the accommodation of the right will have on prison staff and other prisoners, and (4) whether the regulation is an exaggerated response to prison

concerns, in light of readily available alternatives. *Harper v. Wallingford*, 877 F.2d 728, 732 (9th Cir. 1989). Furthermore, there must be evidence that the defendant actually caused the infringement. *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) (in an action brought under 42 U.S.C. § 1983, plaintiff must establish causation, as by demonstrating the duties and responsibilities of defendant).

In the verified complaint, plaintiff alleges that defendant Thomas said that he wanted plaintiff housed at High Desert State Prison, distant from plaintiff's family, because Thomas did not like people who assault law enforcement officers. Third Am. Comp. at unenumerated page 4. It is undisputed that at the time of the events giving rise to this action, CDCR designated its prisons by the level of security provided. It also is undisputed that, in addition to various subjective considerations, there is an objective system for calculating the security risk a prisoner poses in order to determine where the prisoner should be confined. Defendant Thomas has submitted evidence that he used this system and arrived at a classification score of 62. As a matter of state law, that score made him eligible for housing at a Level IV prison. Also as a matter of state law, HDSP is a Level IV prison. Defendant Thomas also submit evidence that a different individual, not named as a defendant in this action, decided to place plaintiff at HDSP. Plaintiff submits nothing to contest this evidence. Finally, there is no evidence that countervailing circumstances existed to justify housing plaintiff in a less secure institution.

Drawing all reasonable inferences in plaintiff's favor, the evidence shows that defendant Thomas disliked plaintiff because plaintiff was convicted of assault on a law enforcement officer and he wanted plaintiff to be housed at HDSP to prevent plaintiff from seeing his relatives. If there were evidence showing that the basis for placing plaintiff at at HDSP were an officer's antipathy for him, then the decision could not be said to have been reasonably related to legitimate penological interests. However, plaintiff submits no evidence connecting Thomas' stated dislike of plaintiff to the other prison official's decision to place plaintiff at HDSP. Consequently, no reasonable jury could find that Thomas's dislike for plaintiff resulted in the

housing decision. In the absence of such evidence, plaintiff cannot withstand defendant's motion. Defendant's motion must be granted with respect to this claim.

Plaintiff next claims that defendant R. Thomas was deliberately indifferent to plaintiff's safety by deciding to place plaintiff in a maximum security prison even though plaintiff was not, according to CDCR criteria, considered dangerous enough so as to require such placement. Plaintiff alleges that as a result, he was attacked by fellow prisoners at LAC. Defendant Thomas asserts that plaintiff cannot prove that his actions resulted in the attacks. The Eighth Amendment requires that the conditions of a prisoner's confinement, even if harsh, have some legitimate penological purpose. *See Hudson v. Palmer*, 468 U.S. 517, 584 (1984); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment if they are deliberately indifferent to a risk of harm at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It is important to bear in mind that confinement "strips [prisoners] of virtually every means of self-protection." *Farmer*, 511 U.S. at 833. To be deliberately indifferent, a prison official must know of, or infer from the circumstances, a risk of harm or injury that "is not one that today's society chooses to tolerate," yet fail to take reasonable actions to mitigate or eliminate that risk. *Farmer*, 511 U.S. at 837; *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Plaintiff has the burden of demonstrating the defendant actually caused the violation. *See Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988) (in an action brought under 42 U.S.C. § 1983, plaintiff must establish causation, as by demonstrating the duties and responsibilities of defendant). As mentioned above, defendant Thomas merely calculated plaintiff's classification score. Plaintiff has not submitted evidence showing that the calculation was wrong. Defendant Thomas has submitted evidence that following investigation into the factors that plaintiff asserted would entitle him to a lower score, prison officials determined that his score actually was substantially *higher* than that calculated by Thomas. Thus, defendant Thomas's initial calculation was not to plaintiff's detriment. The evidence also shows that while at HDSP, plaintiff requested that he be transferred to CCI or

Corcoran in order to be closer to his family. Prison officials determined that space for plaintiff was not available at these institutions, but approved his transfer to LAC instead. There is no evidence that defendant Thomas was involved in selecting the institution where plaintiff would be confined. There is no evidence that defendant Thomas knew that plaintiff faced an unreasonable risk of harm at LAC. Nor is there any evidence that Thomas was even remotely involved in the decision to house plaintiff there. No reasonable jury could find in plaintiff's favor on this evidence. Therefore, defendant's motion must be granted with respect to this claim.

Accordingly, it is hereby RECOMMENDED that:

1. Defendant's September 25, 2006, motion for summary judgment be granted;

2. Judgment be entered in favor of defendant Thomas; and

3. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 16, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE